[No. 14424.   Department Two.   April 4, 1918.]

K. D. BRABSTON *et al., Respondents, v.*
J. E. SHREWSBURY, *as Constable of*
*Seattle Precinct, King County,*
*et al., Appellants.*[1]

SHERIFFS AND CONSTABLES — ACTION FOR NEGLIGENCE — DAMAGES —
MENTAL ANGUISH.  Mental anguish and disgrace is not a proper
element of damages for negligence on the part of a constable in
breaking and leaving open a trunk in conducting a search for con-
traband liquor.

SAME—ACTION FOR NEGLIGENCE—EVIDENCE—SUFFICIENCY.  In an
action against a constable for the loss of a brooch, through his negli-
gence in breaking and leaving open a trunk in conducting a search
for contraband liquor, the testimony of the prosecuting witness as to
the loss of the brooch is insufficient to support the judgment, where
it was so improbable as to be utterly incredible and was impeached
by two disinterested witnesses and other circumstances.

Appeal from a judgment of the superior court for
King county, Tallman, J., entered May 17, 1917, upon
findings in favor of the plaintiffs, in an action in tort,
tried to the court.  Reversed.

*Alfred H. Lundin, Edwin C. Ewing,* and *Peters &*
*Powell,* for appellants.

*James Kiefer,* for respondents.

HOLCOMB, J.—Respondents had judgment upon a
cause of action alleging negligence on the part of the
officer in breaking and leaving open a trunk belonging
to Mrs. Brabston, in conducting a search under a
search warrant for suspected contraband liquor, in a
hotel where respondents lodged, in North Bend, King
county.   There was an allegation of damage in the
sum of $400 by reason of "mental anguish, humiliation,
annoyance, and disgrace," which the court properly

[1] Reported in 171 Pac. 1012.

refused to consider appropriate elements of damage
in such action. It was alleged that a certain diamond
brooch of the intrinsic value of $350 was contained in
the trunk at the time it was forcibly opened and
searched, and that it had been stolen from the trunk,
after the search and before respondents returned home
some hours later, by reason of the trunk being care-
lessly and negligently left unlocked.

No allegation or evidence connected the officer with
the actual abstraction of the brooch. There was no
evidence tending to trace the theft to any person. The
evidence as to the loss of the brooch was solely that
of Mrs. Brabston. She testified, in substance, that the
brooch was seen by her in her trunk when she left the
room at about six o'clock in the morning of the day
of the search to go from North Bend to Seattle; that
she locked the trunk; that, when she returned, about
8:15 or 8:30 in the evening of the same day, the trunk
had been opened by detaching the two locks on it, and
had not been closed entirely; that the brooch and the
box containing it were missing, and in place thereof
had been left a cheap paste imitation worth about ten
cents; that the brooch was worth $350. She also testi-
fied that there was considerable other jewelry in the
trunk aggregating in value approximately $2,000, none
of which was taken.

We cannot and do not believe this tale. It taxes
credulity beyond the limit. It passes belief that some
person other than the officers who made the search—
who could have known nothing beforehand of it, since
the deputy prosecuting attorney placed the search
warrant in the hands of the officer after arriving at
North Bend from Seattle about noon and the search
of the premises occurred immediately—saw the brooch
in its small box, purloined it after the officers had de-
parted, substituted an imitation brooch in its place,

and left $1,700 worth of other jewelry in the trunk untouched.

Although mindful of the rule applicable when the trial court has the opportunity of seeing, hearing, and judging of the credibility of the witnesses at first hand, we are also cognizant that Mrs. Brabston was an interested witness and the most interested person in the success of her cause; that she was undoubtedly smarting under the sense of injury, "humiliation and disgrace," because of her effects having been searched for unlawful merchandise, no matter how lawful, technically, the search. We also must consider and weigh the evidence upon the record *de novo,* as required by law.

Two officers, Shrewsbury and another constable, conducted the search, and a deputy prosecuting attorney stood by and observed. They testified that they opened the trunk by prying out three small nails in each of the two locks, which loosened the locks from the trunk; that they lifted the tray out, felt around in the lower part of the trunk, "found nothing for which they were searching," replaced the contents of the trunk, replaced the tray in the same condition as before, closed the lid, replaced the locks, and inserted the three small nails in each as they were before except that the nails could not be clinched on the inside of the box of the trunk with the lid closed as they were before, but that outwardly the trunk and the locks had the same appearance as before they took off the locks; that, when they opened the trunk, no jewelry was visible in it; that they saw none. One of the constables was sued and the other was not, and the deputy prosecutor was not. Certainly, then, these two were, at least apparently, disinterested witnesses. There was some other evidence tending to show that Mrs. Brab-

ston had made statements tending to show that she had herself previously had her diamond brooch altered into ring settings; and that her husband objected to her keeping the brooch for personal reasons. The testimony of the principal witness for respondents, which stands alone as to the loss, being so thoroughly improbable as to be utterly incredible, we feel, upon the careful consideration thereof and of the whole record, that the preponderance of evidence does not support . the findings of the trial court.

The judgment is therefore reversed.

ELLIS, C. J., and MOUNT, J., concur.